IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS SARVER, | |
| Plaintiff, | Case No. 2:21-cv-517 _____ |
| v. | |
| CONTACT US COMMUNICATIONS, | JURY TRIAL DEMANDED |
| Defendant. | |

**COMPLAINT**

NOW COMES Plaintiff, Nicholas Sarver, by and through his attorney, Prabhu Narahari, Esq., of Manes & Narahari LLC, and files this Complaint alleging as follows:

**I. Nature of the Action**

1. Plaintiff brings this Complaint to recover damages under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., and the Pennsylvania Human Relations Act of 1955 ("PHRA") 43 Pa. Cons. Stat. § 951 *et seq.* Plaintiff alleges that he was discriminated against as a result of his need to take a brief leave of absence from his employment with Defendant in order to treat his disability of Spinal Stenosis. The alleged discrimination culminated with Plaintiff's unlawful termination, as he alleges in detail below.

## II. Jurisdiction and Venue

2. This action arises under the ADA. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania. The venue is proper pursuant to 28 U.S.C. § 1391(b).

5. Plaintiff filed a timely charge with the Equal Employment Opportunity Employment Commission ("EEOC") regarding his allegations under the ADA on July 8, 2020, under charge number 533-2020-01850. *See Exhibit 1*.

6. Plaintiff was mailed Notice of Right to Sue from the ("EEOC") on January 19, 2021. This Complaint has been filed within ninety days of the Plaintiff's receipt, thus making this action timely. *See Exhibit 2*.

## III. Parties

7. Plaintiff, Nicholas Sarver ("Plaintiff"), is an adult individual with a primary residence located at 225 Wainwright Drive, McKeesport, PA 15123.

8. Defendant, Contact Us Communications ("Defendant") is an Ohio business corporation with a regular place of business located at 37000 Fishinger Boulevard, Columbus, OH 43026.

**IV. Facts**

9. Plaintiff began working for Defendant as a salesman for Defendant Contact Us Communications in April 2020. Plaintiff's duties were primarily in assisting Talbots customers with product ordering.

10. Plaintiff's position allowed him to work exclusively from home with the assistance of equipment provided by Defendant.

11. At the time of his hiring, Plaintiff informed members of Defendant's management staff that he was not in good health. Specifically, Plaintiff disclosed that he was previously diagnosed with Spinal Stenosis, which caused the development of several hernias throughout his entire back. As a result of his disability, Plaintiff also developed an adle hernia near his stomach.

12. Around the time of his hiring, Plaintiff began to undergo a series of frequent medical tests regarding the growth in his stomach and other issues related to his diagnosis of Spinal Stenosis.

13. In addition to his numerous medical concerns, Plaintiff also had significant issues with his sciatic nerve, and, as a result, lost considerable use of the left side of his body.

14. Plaintiff specifically informed Defendant of all of his disabilities, even sending members of management pictures and medical information prior to his hiring. He informed his superiors that he would likely require time off for medical appointments, and he explained that he sometimes needed to take breaks based on the extreme pain that he experienced.

15. Plaintiff was told that his disabilities would not be a problem and that Defendant's management staff would work with him for whatever he needed.

16. Shortly after he began his employment, Plaintiff started to have back spasms that caused him extreme pain.

17. The issues with his spine worsened, and his back nearly crippled into the shape of a banana. When Plaintiff saw his physician, he was prescribed powerful medication to address the spinal inflammation.

18. Plaintiff was also instructed by his physician to stay in bed for an entire week.

19. His physician provided him with a note to take off of work from Monday to Monday. As a result, Plaintiff notified Defendant's management staff of his need to take a week off due to his disability. Plaintiff was told that it was fine for him to do that.

20. Two members of Defendant's management staff – Toby Last Name Unknown ("LNU") and Jasmina LNU – reached out to Plaintiff and asked if there was anything that they could do to help him. Plaintiff was told that he could go to them if he ever needed assistance or if he simply wanted to talk about his health issues.

21. Plaintiff was extremely grateful for their support.

22. However, three days into his approved medical leave, Plaintiff was contacted by Toby LNU and a Human Resources Representative named Becky LNU.

23. Toby LNU and Becky LNU notified Plaintiff that he was terminated from his position for missing too many days of work.

24. Plaintiff was very confused, as just days prior he was told that there was no problem with him taking off of work for one week due to his disability.

25. It was suggested to Plaintiff that he take a medical resignation, but few details were provided to him regarding the process and potential consequences.

26. Members of Defendant's management further told Plaintiff he could re-apply for his position, but that he would have to re-do training and turn in his company-owned work computer.

27. Still confused by this directive, Plaintiff asked for Defendant to send him their position in writing – including the fact that he was being terminated but could reapply for the position. Initially, Toby LNU and Becky LNU said that they would email him a termination notice. They later refused and explained that corporate management prevented them from doing so.

28. Plaintiff was subsequently terminated from his position on approximately May 21, 2020.

## COUNT I
### Disability Discrimination in Violation of the ADA

29. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

30. In order to establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show:

   a. "He is a disabled person within the meaning of the ADA;

   b. He is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer;

   c. He has suffered an otherwise adverse employment decision as a result of the discrimination." Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998).

31. The inquiry into whether a person is disabled under the ADA is made on a case-by-case analysis. Tice v. Centre Area Transport Authority, 247 F.3d 506 (3rd Cir. 2001).

32. The term "disability" is defined under the ADA as:

   a. "A physical or mental impairment that substantially limits one or more major life activities of such individual;

   b. A record of such an impairment; or

   c. Being regarded as having such an impairment." 29 C.F.R. § 1630.2(g).

33. Here, Plaintiff is disabled within the meaning of the ADA because of his diagnosis of Spinal Stenosis and his resulting medical issues, including pain and damage to his spine and hernias throughout his body. This diagnosis impacts Plaintiff's ability to ambulate and to sit upright for long periods of time. The resulting pain further impacts his ability to do any prolonged activity. Plaintiff has further lost considerable use of the left side of his body as a result of his disability, which also impacted his mobility and causes him pain.

34. Plaintiff was formally and officially diagnosed by his physician with Spinal Stenosis and the resulting medical issues.

35. Plaintiff was further regarded by Defendant as having the disability, as he provided Defendant with a detailed review of his condition at the start of his employment.

36. Because Plaintiff's position with Defendant took place in Plaintiff's home, he was able to perform the essential functions of his position, which primarily consisted of sales and support phone calls. This work-from-home situation was unrelated to Plaintiff's disability.

37. For the bulk of his employment, Plaintiff was successful in completing his assigned tasks and taking the various calls which Defendant directed to him.

38. Plaintiff requested a reasonable accommodation in the form of a week-long medical leave of absence after his physician recommended one week of bed rest in order to treat his condition and alleviate some of the pain associated with his disability. This request was made in order for Plaintiff to take time to heal such that he could return to work to resume the functions of his position.

39. However, during his medical leave, Plaintiff was terminated by Defendant.

40. Plaintiff was told that he could re-apply for his position, but was not provided with sufficient guidance for him to proceed. He was also told that he would be required to re-enter a

training program, despite the fact that was successful in his position over the course of his employment.

41. This instance of termination constituted an act of adverse employment action.

42. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT II
### Retaliation in Violation of the ADA

43. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

44. In order to establish a *prima facie* case of retaliation under the ADA, a plaintiff must show:

   a. He engaged in a "[p]rotected employee activity;

   b. Adverse action by the employer either after or contemporaneous with the employee's protected activity; and

   c. A causal connection between the employee's protected activity and the employer's adverse action." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).

      i. In order to show a causal connection, a plaintiff may show "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

45. Notably, "retaliation against an employee for requesting an accommodation" constitutes "[p]rohibited discrimination under the ADA." Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 188 (3d Cir. 2010)

46. Here, Plaintiff engaged in a protected activity when he requested a week-long bout of medical leave. This request was accepted and approved of by Defendant.

47. While on medical leave, Plaintiff was terminated by Defendant.

48. Defendant provided no reason for Plaintiff's termination, other than the fact that he had missed too much work as a result of his medical leave. Plaintiff's job performance was never otherwise critiqued, nor was he told that his approved medical leave would result in his termination.

49. Further, because Plaintiff was terminated during his medical leave, the timing suggests a causal connection between his engagement in the protected activity and the adverse employment action which took the form of termination. See Lauren W., 480 F.3d at 267.

50. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT III
**Disability Discrimination in Violation of the PHRA**

51. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

52. The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. Bialko v. Quaker Oats Co., 434 F. App'x. 139, 142 n.5 (3d Cir. 2011) (citing Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002).

53. Because Plaintiff is able to state a viable claim of disability discrimination under the ADA, so too will he be able under the PHRA.

54. Here, Plaintiff is disabled within the meaning of the ADA because of his diagnosis of Spinal Stenosis and his resulting medical issues, including pain and damage to his spine and hernias throughout his body. This diagnosis impacts Plaintiff's ability to ambulate and to sit upright for long periods of time. The resulting pain further impacts his ability to do any prolonged activity. Plaintiff has further lost considerable use of the left side of his body as a result of his disability, which also impacted his mobility and causes him pain.

55. Plaintiff was formally and officially diagnosed by his physician with Spinal Stenosis and the resulting medical issues.

56. Plaintiff was further regarded by Defendant as having the disability, as he provided Defendant with a detailed review of his condition at the start of his employment.

57. Because Plaintiff's position with Defendant took place in Plaintiff's home, he was able to perform the essential functions of his position, which primarily consisted of sales and support phone calls. This work-from-home situation was unrelated to Plaintiff's disability.

58. For the bulk of his employment, Plaintiff was successful in completing his assigned tasks and taking the various calls which Defendant directed to him.

59. Plaintiff requested a reasonable accommodation in the form of a week-long medical leave of absence after his physician recommended one week of bed rest in order to treat his condition and alleviate some of the pain associated with his disability. This request was made in order for Plaintiff to take time to heal such that he could return to work to resume the functions of his position.

60. However, during his medical leave, Plaintiff was terminated by Defendant.

61. Plaintiff was told that he could re-apply for his position, but was not provided with sufficient guidance for him to proceed. He was also told that he would be required to re-enter a

training program, despite the fact that was successful in his position over the course of his employment.

62. This instance of termination constituted an act of adverse employment action.

63. The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## COUNT IV
### Retaliation in Violation of the PHRA

64. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

65. As stated above, in violating the ADA, Defendant thereby violated PHRA.

66. Because Plaintiff is able to state a viable claim of unlawful retaliation under the ADA, so too will he be able under the PHRA.

67. Here, Plaintiff engaged in a protected activity when he requested a week-long bout of medical leave. This request was accepted and approved of by Defendant.

68. While on medical leave, Plaintiff was terminated by Defendant.

69. Defendant provided no reason for Plaintiff's termination, other than the fact that he had missed too much work as a result of his medical leave. Plaintiff's job performance was never otherwise critiqued, nor was he told that his approved medical leave would result in his termination.

70. Further, because Plaintiff was terminated during his medical leave, the timing suggests a causal connection between his engagement in the protected activity and the adverse employment action which took the form of termination. See Lauren W., 480 F.3d at 267.

71.     The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal law to be free from discrimination.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor, and against the Defendant, and award all damages available at law and equity, including:

a) Lost back pay resulting from Defendant's wrongful termination of Plaintiff;

b) Lost front pay continuing into the future for Defendant's unlawful conduct;

c) Compensatory damages, including emotional damages and humiliation;

d) Punitive damages to punish Defendant's conduct and to deter similar future conduct;

e) Costs for bringing this action;

f) Attorneys' fees;

g) Pre-judgment and continuing interest; and

h) Any other relief that this Court deems necessary and proper.

Respectfully Submitted,

/s/ Prabhu Narahari
Prabhu Narahari, Esq.
PA ID: 323895
**Manes & Narahari LLC**
Law & Finance Building
429 Fourth Avenue, Suite 300
Pittsburgh, PA 15219
(412) 626-5588 Direct
(412) 650-4845 Fax
pn@manesnarahari.com

## VERIFICATION

I, Nicholas Sarver, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

_____
Nicholas Sarver